UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
REMI LABA,                                            :
                                                      :
                              Plaintiff,   :
                                                      :
              v.                                      :
                                                      :
JBO WORLDWIDE SUPPLY PTY LTD,                          :
                                                      :
              Defendant/Third-Party Plaintiff.   :
                                                      :
                                                      :
              v.                                      :
                                                      :
REMI LABA, MARTIN BERGH, WAYNE                        :
BEBB, IAIN BANNER, ROOIBOIS LIMITED,                  :
NATURALLY OUT OF AFRICA PERFECTLY                     :
NATURAL PTY LTD, NOOA CALIFORNIA,                     :
LLC, and JOHN DOES 1-5,                               :
                                                      :
                              Third-Party Defendants.   :
                                                      :
                                                      :
                                                      :
------------------------------------------------------------- X

**ORDER DENYING PLAINTIFF'S**
**MOTION AND GRANTING**
**DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT**

20 Civ. 3443 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        In May 2020, Plaintiff Remi Laba ("Plaintiff") brought this suit against Defendant

JBO Worldwide Supply Pty Ltd. ("Defendant") asserting claims for breach of contract, quantum

meruit, and unjust enrichment to recover $100,000 allegedly owed under a finder's fee

agreement.  Defendant denied the existence of a valid agreement and claimed that the agreement

offered by Plaintiff and purporting to contain Defendant's signature was a forgery.  Based on the

dueling contentions, the key issue in this case to date has been the authenticity of Defendant's

signature on the written long-form agreement.

        Before me now are Plaintiff and Defendant's motions for summary judgment on

Plaintiff's claims.[1]  (ECF Nos. 236 (Plaintiff's Motion for Summary Judgment), 241

(Defendant's Motion for Summary Judgment).)  Even though Plaintiff started this case alleging a

written agreement, in his motion for summary judgment, he now asserts a right to recover the

finder's fee based on an oral agreement, citing a series of emails purportedly evidencing the

agreement.  However, the emails do not show the certain terms or conditions of the agreement,

and none is subscribed to by Defendant, the party to be charged.  Under New York law, a

finder's fee agreement must be in writing.  As explained further below, the emails are not

sufficient to establish such a writing.  Therefore, Plaintiff has no claim under New York law.

Plaintiff's motion for summary judgement is denied, and Defendant's motion is granted.

Plaintiff is the co-founder of Bagatelle Group Inc., the owner of an international

chain of restaurants located around the world.  Defendant operates and licenses Coco Safar, a

concept brand for luxury coffee cafes, espresso bars and capsule retail emporiums which serve

luxury coffee, Rooibos tea, and baked goods.  In February 2019, Plaintiff spoke to Wilhelm

Liebenberg ("Wil"), the managing director of Defendant JBO, and informed him that Plaintiff

had identified a lucrative opportunity for Defendant to license the Coco Safar brand to Advanced

Tastes Company Ltd. ("Advanced Tastes"), a company located in Saudi Arabia, to open a pop-

up store in Saudi Arabia.  Plaintiff offered to make an introduction in exchange for a finder's fee

equal to 20% of the license fees received by Defendant.

Plaintiff subsequently made the introduction and, although the pop-up store never

came to fruition, in March 2019, Advanced Tastes paid Plaintiff $800,000, which included

$300,000 for hard costs of the pop-up store and $500,000 in licensing fees.  On April 9, 2022,

Plaintiff sent Defendant an invoice for 20 percent of the $800,000 received ($160,000) as well as

---

[1] Defendant also has asserted a counterclaim and third-party complaint against Plaintiff and various third parties.
(ECF No. 201.)  These claims are not at issue in the present motions.

a draft of a long-form finder's fee agreement backdated to March 1, 2019.  After Defendant

clarified that only $500,000 constituted licensing fees, Plaintiff sent a revised invoice for a 20

percent fee on only the licensing fee portion, totaling $100,000.  To date, Plaintiff has not

received any money, and Defendant claims none is owing because he never signed the long-form

finder's fee agreement.

Notwithstanding the absence of a signed long-form agreement, Plaintiff claims

that he and Defendant consummated an oral agreement in February, and that the agreement is

evidenced in a series of emails as follows.

On March 6, 2019, Defendant sent an email to Advanced Tastes relating to a pop-

up location in Saudi Arabia stating that "[i]t's a great and timely pleasure to be introduced to you

by Plaintiff."  ECF No. 238-2.

On May 8, 2019, Plaintiff received an email from Martin Bergh, the managing

director of Rooibos Limited and purporting to be acting in his role of chairman of Coco Safar

Sea Point and director of Defendant JBO.  Bergh stated that "[they] had a board meeting today to

review the agreement proposed to Wil who represents JBO, the company which entered into the .

. . pop-up agreement . . . in Saudi Arabia."  ECF No. 238-4.  He further stated that the agreement

included a payment of $500,000 to JBO to participate in the pop-up opportunity, and that

Plaintiff made a request to Wil to receive 20% of the $500,000, as an introduction fee, agreed to

be paid when the funds were received by JBO.  *Id.*  However, Bergh went on to state that the

pop-up never happened but that the principal of Advanced Tastes suggested it be held at a future

date for a longer period of time with more buildout costs to be paid owing to the more significant

pop-up.  Bergh sought to confirm that Plaintiff was requesting 20 percent of the further funds

and any future funds.  *Id.*  Finally, Bergh stated that "Wil [wa]s not in a position to make a

decision as to this type of obligation" and "ha[d] to clear this with JBO/OBH board of directors."

*Id.*  In response, Plaintiff clarified that he was only seeking 20% of the original licensing fees

paid, totaling $100,000, and sent the above-noted revised invoice on May 8, 2019 reflecting that

amount.

   On June 6, 2019, Plaintiff received an email from Defendant's finance manager

Arnold Rabie stating that his role and that he had "received an instruction from Martin Berg[h]

and the Board of Directors of Coco Safar to make a payment to [Plaintiff]" but that he had yet to

confirm the amount.  ECF No. 238-5.

   Finally, on July 3, 2019, Rabie again emailed Plaintiff explaining that Defendant

issued an invoice to Advanced Tastes for $500,000 for the Saudi Arabia pop-up experience, but

that after the deal fell through, there was a second invoice for $300,000 as part payment of the

$500,000, for which Plaintiff would get a 20% fee, and that it was not clear when the balance of

$200,000 would be paid.  ECF No. 238-6.

   Plaintiff alleges a finder's fee agreement, which under New York law, must be in

writing, contain the key terms of an agreement, and be signed or subscribed to by the party to be

charged.  *See* N.Y. Gen. Oblig. L. § 5-701(a)(10); *see also Fitz-Gerald v. Donaldson, Lufkin &*

*Jenrette, Inc.*, 294 A.D.2d 176 (1st Dep't 2002); *Baytree Associates, Inc. v. Forster*, 240 A.D.2d

305, 306 (1st Dep't 1997); *Freedman v. Chemical Const. Corp.*, 43 N.Y.2d 260, 267 (1977)

(holding that § 5-701(a)(10) applies to such situations in which "the intermediary's activity is so

evidently that of providing 'know-how' or 'know-who,' in bringing about between principals an

enterprise of some complexity or an acquisition of a significant interest in an enterprise").  The

Statute of Frauds does not require a writing to be a single document and "may be pieced together

out of separate writings, connected with one another either expressly or by the internal evidence

of subject matter and occasion." *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 54 (N.Y. Ct. App. 1953).  Although such memoranda may be in the form of emails, *see, e.g.*, *Esther Creative Group, LLC v. Gabel*, 901 N.Y.S.2d 906 (Sup. Ct. New York County 2009) (holding that "summary statements, e-mails and checks issued by Defendants considered together in addition to other evidence . . . may well satisfy the statute's writing requirement"), the emails offered here are insufficient.  Not only do the emails lack the terms or certain conditions of the purported agreement, but fatally, not a single one is signed or subscribed to by Defendant JBO (the party to be charged) or Wil (the principal who supposedly entered into and accepted the agreement on behalf of Defendant JBO).   Therefore, under New York law, Plaintiff has no claim.

Defendant claims that the emails sent after the fact evidence the agreement; however, as noted above, the emails were neither sent to nor signed by Defendant JBO or its principal Wil, and instead merely contain Plaintiff's recounting of his purported right to recover a percentage of license fees.  They do not evidence a meeting of the minds between Plaintiff and Wil or JBO.  Furthermore, the May 8, 2019 email from Bergh, stating that Wil was not in a position to make a decision of this particular nature and had to clear it with the board of directors, is inconsistent with Wil having entered into a binding agreement several months prior for he lacked the power to do so.

Moreover, neither evidence of payment from Advanced Tastes to Defendant JBO—whether fees for the unconsummated pop-up store or some future arrangement—nor emails from Wil acknowledging the introduction saves Plaintiff's claim.  New York courts have rejected the notion that claims governed by New York's Statute of Frauds, N.Y. Gen. Oblig. L. § 5-701, may be enforced by reason of part performance.  *See, e.g.*, *Valentino v. Davis*, 270

A.D.2d 635, 637 (3d Dep't 2000) (citing *Messner Vetere Berger McNamee Schmetterer Euro RSCG v. Aegis Grp. PLC*, 93 N.Y.2d 229, 234 n.1 (1999)) ("To the extent that plaintiff attempts to avoid the Statute of Frauds defense by arguing that the doctrine of part performance should be applied, we reject this argument.  The Court of Appeals has recently clarified that the doctrine of part performance cannot save contracts governed by General Obligations Law § 5-701 . . . .").

Having failed to adduce evidence to satisfy New York's Statute of Frauds, as to the breach of contract claim, Plaintiff's motion for summary judgment is denied and Defendant's is granted.

As to the unjust enrichment and quantum meruit claims, New York courts allow such quasi-contract claims to proceed when the writings are sufficient to establish the existence of agreement and any missing term can be implied in law or by implication from the surrounding writings.  *See, e.g.*, *Blye v. Colonial Corp. of America*, 102 A.D.2d 297, 299 (1st Dep't 1984) (allowing quantum meruit claim where "except for the absence of a firm agreement as to the amount of plaintiffs' compensation, the letter adequately set[] forth the terms of the contract claimed by plaintiffs"); *Shapiro v. Dictaphone Corp.*, 66 A.D.2d 882, 884–85 (2d Dep't 1978) (finding quantum meruit claim not barred where writings evidenced the agreement's "subject matter, plaintiff's role, and the fact that the plaintiff's services were never intended to be gratuitously furnished," as well as defendant's acknowledgement of plaintiff's performance).  In contrast, New York courts dismiss quasi-contract claims under the Statute of Frauds where the writings relied upon fail to establish that the defendant agreed to pay a finder's fee, or where the writings leave ambiguity as to whether the agreement's terms covered the transaction upon which a fee is claimed.  *See R.B. Hamilton & Assocs. v. Gibbons Green and Van Amerongen, Ltd.*, 169 A.D.2d 554, 564 (1st Dep't 1991) (dismissing finder's fee claim where each of the

writings relied upon by plaintiff did not refer to "the particular transaction for which plaintiff

now seeks a fee"); *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372m 379

(1969) (dismissing claim under Statute of Frauds where writing did not cover the acquisition that

ultimately took place).

   Here, the writings offered by Plaintiff fall into the latter category.  First, the

emails leave ambiguity as to whether Defendant might have agreed to pay Plaintiff for an

unconsummated opportunity.  Second, the July 3, 2019 email from Rabie leaves ambiguity about

the amount Plaintiff would be entitled to recover.  Finally, as with Plaintiff's breach of contract

claim, the emails were neither prepared nor signed by Defendant JBO or its principal, Wil, the

party who supposedly entered into the agreement on behalf of Defendant JBO.  Plaintiff's quasi-

contract claims for unjust enrichment and quantum meruit also are barred by the Statute of

Frauds.  *See Karlin v. Avis*, 457 F.2d 57, 61 (2d Cir. 1972) (dismissing quantum meruit claim

where writings failed to evince that defendant agreed to be bound by alleged agreement and

where documents relied upon were not prepared or signed by defendant).  Thus, as to the

remaining claims, Plaintiff's motion is denied, and Defendant's motion is granted.

   In sum, all of Plaintiff's claims based on an alleged oral agreement memorialized

in a series of emails are barred by the Statute of Frauds.  Plaintiff has no claims under New York

law.  Plaintiff's motion for summary judgment is denied in full, and Defendant's motion is

granted in full.

   The Clerk shall terminate ECF Nos. 236, 241 and enter judgment in favor of

Defendant on Plaintiff's claims.

   However, Defendant's counterclaims and third-party complaint remain.  These

allege, generally, that Plaintiff and the third-party defendants have conspired to steal Defendant's

trade secrets and interfere with its prospective business, and that the instant lawsuit was part of a strategy to bring waves of legal challenges to crush Defendant JBO and unseat its principal officers.  Certain Third-Party Defendants also have filed counterclaims and a third-party complaint against Defendant and its officers.

The parties shall appear for a status conference on October 7, 2022, at 10:00 a.m., as scheduled, to address how the case shall proceed as to all remaining claims.

SO ORDERED.

Dated:     October 4, 2022                          ____/s/ Alvin K. Hellerstein_____
           New York, New York                       ALVIN K. HELLERSTEIN
                                                    United States District Judge